**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ECHOSPAN, INC. | ) |
| | ) |
| Plaintiff, | ) CIVIL ACTION |
| | ) FILE NO.: 1:21-cv-04318-JPB |
| v. | ) |
| | ) |
| MEDALLIA, INC., | ) |
| | ) |
| Defendant. | ) |

## RESPONSE IN OPPOSITION TO MOTION TO DISMISS

## I.   INTRODUCTION

This is a lawsuit about Medallia Inc.'s ("Medallia") wrongful interference in a long-standing contractual relationship between EchoSpan, Inc. ("EchoSpan") and ████████████████████████████████████████████. Medallia lied to EchoSpan to gain access to EchoSpan's proprietary software; breached the terms of a contract limiting Medallia's use of that contract; and is using stolen technology to usurp ██████████ ████████████████████. These allegations support quintessential common law claims for tortious interference, fraud, unjust enrichment, and conversion (and statutory claims for violation of the Georgia Computer Systems Protection Act ("GCSPA") and the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA")). Medallia's partial motion to dismiss argues that these claims are "superseded" by either California or Georgia law. Medallia's motion should be wholesale rejected: California law does not apply at all to this action, and Medallia ignores and misinterprets the Georgia statute on which it relies.

More specifically, Medallia dedicates almost half of its brief to describing California law on supersession, contending that certain California claims EchoSpan does not assert supersede the Georgia claims in the Complaint.  But California law does not apply to this Action, and unpled claims under inapplicable state law do not

supersede validly pled claims under Georgia law. Medallia offers no authority suggesting otherwise.

Medallia's similar supersession argument under Georgia law also fails. Medallia's contention ignores significant components of EchoSpan's claims, those that stem from the myriad obligations Medallia assumed, and the representations Medallia made, in its dealings with EchoSpan. EchoSpan has plausibly alleged wrongdoing independent of misappropriation of confidential information, including that Medallia breached its contractual commitments and committed fraud—it flat out lied to EchoSpan as to Medallia's intentions in entering into the terms and conditions ("Ts&Cs", attached to Compl. (Dkt. 1-1) as Ex. A). Through that wrongdoing, which is independent of the misappropriation of confidential information, Medallia has improperly interfered with EchoSpan's current and prospective commercial relationships. These separate contentions support each of the claims Medallia argues to be duplicative. The GTSA does not supersede these independent claims.

At bottom, Medallia's motion to dismiss is a delay tactic. Medallia's ███████████████████████████████ and its interference with EchoSpan's other customers and opportunities presents an impending and evolving threat to the future viability of EchoSpan's business. Consequently, EchoSpan has moved this

2

Court for expedited injunctive relief and discovery. Medallia has opposed expedited relief and discovery and, upon filing this partial motion to dismiss, has argued to EchoSpan's counsel that discovery should be stayed while its partial motion to dismiss remains pending. Yet, Medallia acknowledges, as it must, that EchoSpan validly asserts claims for breach of contract, violation of the Georgia Trade Secrets Act ("GTSA") and the federal Defend Trade Secrets Act ("DTSA"), and for injunctive relief and attorneys' fees. Because Medallia does not challenge these claims in its partial motion to dismiss, this case will proceed on at least those claims. Indeed, Medallia's motion affects neither the scope of discovery in this case, nor the relief available to EchoSpan following trial. Medallia does not identify how any of the claims it challenges expands the scope of discovery beyond what is implicated with the unchallenged claims. Nor does it argue that the forms of relief, or potential damages, available under the unchallenged claims limit the relief or damages EchoSpan may seek in this case. Medallia's partial motion to dismiss should not prevent this case from proceeding expeditiously to protect EchoSpan's customer relationships, technology, and its continuing viability.

EchoSpan respectfully requests that the Court deny Medallia's ill-founded partial motion to dismiss while simultaneously permitting this to continue

expeditiously as requested in EchoSpan's motion for injunctive relief and expedited discovery.

## II.   ARGUMENT

### A.   The Legal Standards Counsels Disfavors Resolving Supersession on the Pleadings.

Medallia is right to acknowledge the lenient standard applicable on a Rule 12 motion to dismiss. *See* Motion at 5. The "'plausibility standard is not akin to a probability requirement," and to avoid dismissal, EchoSpan need only allege facts sufficient "'to raise a reasonable expectation that discovery will reveal evidence of the claim.'" *Id.* at 6 (citing *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010). "Generally, notice pleading is all that is required for a valid complaint," and "[u]nder notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests." *See Putters v. Rmax Operating, LLC*, No. 1:13-cv-3382-TWT, 2014 WL 1466902, at *1 (N.D. Ga. Apr. 15, 2014).

Considering that standard, Medallia's main contention—that EchoSpan's claims are superseded—is incongruous fit for a Rule 12 motion. *See AirWatch LLC v. Mobile Iron, Inc.*, No. 1:12-cv-3571-JEC, 2013 WL 4757491, at *6 (N.D. Ga. Sept. 4, 2013) (reserving for summary judgement whether claims are supersed); *Schwieterman v. Caterpillar Inc.*, No. 1:20-cv-2611-SCJ, 2021 WL 3026958, at *8

4

(N.D. Ga. July 9, 2021) ("To this regard, the Court deems it proper to deny this portion of Defendant's motion concerning preemption without prejudice to raising the issue again (with additional briefing) at summary judgment").   Similarly, evaluating whether EchoSpan's claims are superseded in this case, before discovery and without affording EchoSpan a fair opportunity to uncover the full scope of Medallia's contractual breaches, misrepresentations, and other misconduct, is premature.  After discovery, EchoSpan can be expected to address the full extent to which its claims are based on wrongdoing independent misappropriation of confidential information (see authority, below).  Discovery may even reveal the need to limit EchoSpan's claims to a narrower set of claims than what is currently pled.

At this stage, though, the Court can evaluate only EchoSpan's allegations. And the question is only whether EchoSpan has plausibly alleged claims that are not superseded. *Putters*, 2014 WL 1466902, at *1.  Medallia is not entitled to dismissal of these claims just because it may be "'improbable' that [EchoSpan] would be able to prove" independent claims; the challenged claims may proceed "'even if the possibility of independent recovery is 'extremely remote and unlikely.'"   *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007)).  Only if the complaint fails to "'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory,'" can

5

Medallia succeed on this motion.  *NCR Corp. v. Pendum, LLC*, No. 1:16-cv-4114-SCJ, at \*1 (N.D. Ga. Aug. 8, 2018) (quoting *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007)).

### B.      Medallia primarily relies on inapplicable California law.

Medallia dedicates a substantial portion of its brief to addressing the extent to which California law, and specifically, the California Uniform Trade Secrets Act, preempts or supersedes EchoSpan's claims.  *See* Motion at 6-11.  But Medallia provides only a footnote to describe why it contends that California law applies, and that footnote's contention is incorrect.  Medallia explains that it is "briefing this Motion based on its expectation that this action will be transferred and that the transferee court will decide the Motion under California law."  *Id.* at 2, n. 1.  The case has not been transferred; it should not be transferred (*see* Dkt. 20); and even if it were transferred, the only authority Medallia cites for the proposition that California law applies following transfer does not support application of California law.  The single case Medallia cites says only that a transferee court may apply its "choice-of-law rules," ***not*** that it will apply the law of the transferee court's forum state.  Motion at 2, n. 1 (citing *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. Of Tex.*, 571, U.S. 49, 64 (2013)).  Medallia thus glosses over the critical distinction

6

between a transferee court applying the *substantive law* of the transferee court's forum state and the court applying the transferee court's "*choice-of-law rules.*"

That distinction, though, is outcome determinative here: California's choice-of-law rules respect contractual governing law provisions. So, were the proposed transferee court to apply California choice-of-law rules, those rules would require enforcement of the parties' contractual selection of *Georgia* law. *See Nedlloyd Group B.V. v. Superior Court*, 3 Cal.4th 459, 464-65 (1992) ("In determining the enforceability of arm's-length contractual choice-of-law provisions, California courts shall apply the principles set forth in Restatement section 187, which reflect a strong policy favoring enforcement of such provisions."). Because the Ts&Cs that EchoSpan alleges to have been breached contain a Georgia governing law provision, (Compl., Ex. A, § 1), Georgia law, not that of California, will apply here, irrespective of whether this action proceeds in this Court or in California.

And, as discussed in more detail in next sections of this memorandum, the GTSA supersession provisions do not apply to the claims Medallia challenges. The statute "supersede[s] *conflicting* tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret," but it does *not* affect "[c]ontractual duties or remedies, whether or not based upon misappropriation of a trade secret" or "[o]ther civil remedies that are not based upon misappropriation of

a trade secret." O.C.G.A. § 10-1-767 (emphasis added). The claims Medallia challenges in its partial motion to dismiss fall into the categories that the GTSA expressly does not impact.

### C. EchoSpan's claims fall within the express reservations of O.C.G.A. § 10-1-767.

Medallia's motion rests on its incorrect characterization of EchoSpan's complaint as rifle-shot; that is, focused ***exclusively*** on EchoSpan's confidential information and Medallia's alleged misappropriation of that information. Medallia argues that "[a]ll of these claims are based on the ***same nucleus of facts*** as the claim for misappropriation of trade secrets." Motion at 8 (emphasis added).

As an initial matter, that phrase—same nucleus of operative facts—has no application to GTSA supersession. None of the authority Medallia cites supports such a sweeping scope of GTSA's supersession clause. And, to the contrary, that reading conflicts with the plain text of the statute. The GTSA supersedes only "***conflicting***" remedies "for misappropriation of a trade secret," not all claims based on the same nucleus of operative facts as a trade secret claim. O.C.G.A. § 10-1-767(a). Medallia invokes and applies the wrong standard.

Further, EchoSpan's claims are not nearly as narrow as Medallia suggests. EchoSpan alleges that Medallia lied to EchoSpan and breached the Ts&Cs governing its technology to wrongfully interfere in a long-standing contractual

relationship between ███████████████████████ and to interfere with additional customers and business opportunities belonging to EchoSpan. To be sure, EchoSpan alleges that Medallia stole its technology and confidential information *as one of several* acts to interfere with its relationships. But all of EchoSpan's claims (except the unjust enrichment claim) ultimately relate to and are supported by Medallia's breach of contract. Thus, all the challenged claims exist independent of and do not conflict with the allegations under the GTSA.

Considering the correct standard, and the fact that EchoSpan's claims are not nearly as limited as Medallia contends, the GTSA does not supersede these claims.

1.    EchoSpan's claims are based on Medallia's contract breach.

The GTSA expressly does not preempt claims based on "contractual duties," regardless of whether those claims are based on misappropriation of a trade secret (O.C.G.A. § 10-1-767(b)(1)).  Medallia does not challenge EchoSpan's contract claim, acknowledging both that the claim is sufficiently pled and that the GTSA does not preempt that claim.  But Medallia ignores that Medallia's breach of contract relates to, and ultimately supports, EchoSpan's remaining claims.  Those claims, except for unjust enrichment, relate to the terms of these contracts such that they are all based on these "contractual duties" (O.C.G.A. § 10-1-767(b)(1)) and, thus, not impacted by the GTSA.  *See Schwieterman*, 2021 WL 3026958, at *8 (denying

9

motion to dismiss based on alleged supersession because of relation to contract claim: "The Court is concerned that because the good faith at issue here is an implied contractual duty, the Court may violate the plain language of the GTSA, which indicates that the statute does not affect contractual duties or remedies.").

The relevant contract here—the Ts&Cs that govern Medallia's trial access to EchoSpan's tool—broadly prohibited Medallia from doing what it appears to have done (and some of which it has already admitted to doing (*see* Dkt. 28-1 (Cameron declaration)). Medallia contractually acknowledged that it could use access to EchoSpan's tool "only for the purpose of evaluation of the Hosted Services for purchase" (Ts&Cs, §3.g); Medallia agreed not to use or disclose any EchoSpan Confidential Information (*id.*, §12.c); it committed to not "resell, sublicense . . . or otherwise make Hosted Services available to any third party other than as contemplated by this Agreement (*id.*, §19.b); and Medallia unequivocally agreed it would not "modify, copy or create derivative works based on the Hosted Services" or "reverse engineer the Hosted Services" (*id.*,§19.c).

These contract terms are alleged as entirely distinct from the limitations imposed on Medallia through its access to EchoSpan's confidential information. *See* Compl., ¶¶ 27-28. Further, the Complaint describes in detail how Medallia failed to comply with these contractual requirements. *See* Compl., ¶¶ 47-49, 64-66, 68-73.

10

In addition to, and distinct from, EchoSpan's claims for trade secret misappropriation, EchoSpan contends that these contract breaches support its claims for tortious interference (*id.*, ¶¶ 77, 82); fraud (*id.*, ¶¶ 86-88); conversion (*id.*, ¶ 94); violation of the GUDTPA (*id.*, ¶ 101); and violation of the GCSPA (*id.*, ¶ 118).

Each of these claims references the terms of the Ts&Cs, and the Complaint explicitly pleads that breach of the Ts&Cs, independent of any misappropriation of confidential information, supports these claims.   Dismissing these claims, notwithstanding the Complaint's express reference to the TsC&s as independently supporting these claims, would "violate the plain language of the GTSA" by allowing the GTSA to limit contractual duties and remedies available upon the breach of those duties. *See Schwieterman*, 2021 WL 3026958, at *8.

> 2.      EchoSpan's claims are based on Medallia's fraud.

The GTSA's supersession provision not only exempts "[c]ontractual duties or remedies," but it expressly excludes "[o]ther civil remedies that are not based upon misappropriation of a trade secret."  O.C.G.A. § 10-1-767(b).  Beyond breach of contract, EchoSpan alleges that Medallia committed fraud, and that contention supports many of the claims Medallia challenges as superseded.

### a)    *EchoSpan states a valid fraud claim.*

As somewhat of a throw-away argument in a short, two-paragraph section at the end of its brief, Medallia argues that EchoSpan's fraud claim is not properly pled. Motion at 15-16.    But EchoSpan's allegations make clear precisely what representations were fraudulent (Compl., ¶¶ 85-86), when those representations were made (*id.*, ¶¶ 23-26); by whom (*id.*, ¶ 41), and how EchoSpan relied on those representations to its detriment (*id.*, ¶¶ 29-32).  Nothing more is required to maintain a fraud claim.  *See e.g., Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, (11th Cir. 2008) ("Thus, under Rule 9(b), it is sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent.").

To be sure, the express representations EchoSpan alleges to have been fraudulent are in the Ts&Cs.  *See id.*, ¶¶ 25-26 (identifying relevant terms of the Ts&Cs); *id.*, ¶¶ 85-86 (identifying representations that were fraudulently made).  It appears that Medallia contends a contractual representation can never form the basis for fraud.  Motion at 15 ("[A] mere breach of contract does not give rise to a tort . . . ."). That is not the law.  *See Mecca Construction, Inc. v. Maestro Investments, LLC*, 320 Ga. App. 34, 42 (2013) ("'A promise made without a present intent to perform is a misrepresentation of a material fact and is sufficient to support a cause

12

of action for fraud.'") (quoting *Howard v. Hammond*, 215 Ga. App. 703, 706 (1995)); *see also Cowart v. Gay*, 223 Ga. 635, 636-37 (1967) ("[W]hen the failure to perform the promised act is coupled with the present intention not to perform, fraud, in the legal sense, is present. This is known as inceptive fraud . . . ."). Fraud claims are appropriately based on contractual representations, when the party making those representations never intended to comply with them. *E.g.*, *State Farm Mut. Automobile Ins. Co. v. Health Horizons, Inc.*, 264 Ga. App. 443, 447–448 (2003) (affirming judgement on fraud claim based on contention that insurer made promise that it "never intended to do and in fact did not do, to the plaintiff's detriment"); *RMS Titanic, Inc. v. Zaller*, 978 F.Supp. 2d 1275, 1298 (N.D. Ga. 2013). Here, EchoSpan properly alleged that Medallia never intended to comply with its contractual representations; that these representations were inaccurate at the time they were made; and that EchoSpan reasonably relied on these representations to its detriment. *E.g.*, Compl., ¶ 89. That is fraud.

    b)  *The GTSA does not supersede EchoSpan's fraud claim.*

As to whether the GTSA supersedes a fraud claim, this court has previously held that it does not, expressly rejected the argument Medallia advances. *See Zaller*, 978 F.Supp. 2d at 1296-97 (Duffey, J.). In *Zaller*, the Court criticized the defendants' argument that the GTSA broadly preempts fraud-based claims,

13

concluding that the argument is "without sound authority."  *Id.*  And relying on Circuit Court authority that characterized this issue as "not a close question" (*id.* quoting *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 405 (7th Cir. 2005) (Easterbrook, J.)), the Court refused to dismiss a fraud claim as superseded.  *Zaller*, 978 F.Supp. 2d at 1296-97 ("A claim for fraud, which involves willful misrepresentation or deception, may be viable even if the allegedly-misappropriated information was a trade secret or a public record. . . .  Defendants' motion to dismiss Plaintiffs' claims for fraud and fraudulent inducement . . . , on the ground that they are preempted, is denied.").

Medallia cites no contrary authority.  *See* Motion at 12.  Rather, Medallia merely lumps EchoSpan's fraud claim into a laundry list of supposedly superseded "common law claims," contending that the GTSA broadly preempts all these claims. *Id.*  But none of the cases Medallia cites in this section of its brief involved a fraud

14

claim.[1] The only authority directly on point, *Zaller*, rejects this argument, and finds that the GTSA simply does not preempt fraud-based claims.[2]

Even if the GTSA could supersede these claims, Medallia acknowledges that the claim is superseded only if it is based on "'the same factual allegations of misappropriation'" that "'are being used to obtain relief'" under the GTSA. Motion at 11-12 (quoting *Robbins v. Supermarket Equip. Sales, LLC*, 290 Ga. 462, 466-67

---

[1] See *Agilysys, Inc. v. Hall*, 258 F.Supp. 3d 1331, 1352-53 (N.D. Ga. 2017) (involving tortious interference claim); *RLI Ins. Co. v. Banks*, No. 1:14-cv-1108-TWT, 2015 WL 400540, at *2 (N.D. Ga. Jan. 28, 2015) (involving conversion claim); and *Diamond Power Int'l, Inc. v. Davidson*, 540 F.Supp. 2d 1322, 1345 (N.D. Ga. 2007) (involving unjust enrichment claim)).

[2] Medallia's brief does not cite, let alone wrestle with, *Zaller*. But the case is well known to Medallia's counsel. In a 2019 CLE program, Medallia's counsel, Messrs. Fink and Weinrich, were speakers at the Georgia Bar's annual CLE on Restrictive Covenants and Trade Secrets in Georgia, with Mr. Fink serving as the Program Chair.   *See*   https://www.gabar.org/membership/cle/upload/10102_Restrictive_Covenants_and_Trade_Secrets_010819.pdf. Mr. Weinrich appears to have been the speaker on a presentation titled "Trade Secrets, Confidential Information and Computer Fraud and Abuse" and presented written materials that include the following statement: "Nevertheless, 'a claim for fraud, which involves willful misrepresentation or deception, may be viable even if the allegedly-misrepresented information was a trade secret or a public record.'"  *See* Chapter 2 of Materials, p. 44 of 292 (page 135 of 787 of consolidated program materials) (quoting *Zaller*, 978 F.Supp. 2d at 1296).  Of course, counsel's neutral application of Georgia law in a prior CLE presentation does not bind Medallia in this action nor prevent counsel from taking a contrary position in their zealous representation of their client. But it is nevertheless telling as to *Zaller's* persuasiveness on the non-application of the GTSA's supersession provisions to common-law fraud.

15

(2012)).  EchoSpan's fraud claim is not based on the same facts that support its claim for trade secret misappropriation.  The fraud claim relates to representations that do not depend on the use of confidential information.  For instance, EchoSpan alleges that Medallia contractually acknowledged that it could use access to EchoSpan's tool "only for the purpose of evaluation of the Hosted Services for purchase" (Ts&Cs, §3.g); that it would not "resell, sublicense . . . or otherwise make Hosted Services available to any third party other than as contemplated by this Agreement" (*id.*, §19.b); and Medallia unequivocally agreed it would not "modify, copy or create derivative works based on the Hosted Services" or "reverse engineer the Hosted Services" (*id.*,§19.c).  Regardless of EchoSpan's confidential information, these representations are still fraudulent and independently valid as support for EchoSpan's claims for relief.

> c)    *Medallia's fraud supports EchoSpan's common law claims.*

Like EchoSpan's allegations regarding Medallia's breach of the Ts&Cs, EchoSpan's fraud allegations support its common law claims.  For instance, as to EchoSpan's claims for tortious interference with current and prospective business relationships, the law is clear that "tortious interference claims will only be superseded 'where the full extent of the Plaintiff's tort claims rely on the same

allegations as those underlying the Plaintiff's claim for misappropriation of trade secret.'" *Advanced Testing Technologies, Inc. v. CDI Corp.*, No. 5:13-cv-79(MTT), 2013 WL 12212927, at *1 (M.D. Ga. June 6, 2013) (quoting *Davidson*, 540 F.Supp. 2d at 1345). Even when the claim is pled "as being tied to the use of the alleged misappropriated 'proprietary information,'" so long as "the Complaint alleges operative facts over and above those that would exclusively establish a claim for relief under the GTSA," tortious interference claims are not superseded. *Mauser USA, LLC v. Wilburn*, No. 1:19-cv-02361-AT, 2019 WL 8376209, at *4-6 (N.D. Ga. Nov. 22, 2019). Here, the "full extent" of EchoSpan's claims is not based on the same allegations as the misappropriation claim.

EchoSpan specifically alleges that Medallia's tortious interference, both of current and prospective commercial relationships, is based on its actions "in contradiction to the representations Medallia made to EchoSpan." Compl., ¶¶ 77 (███████████████████████████████████), 82 (regarding prospective business relationships).[3] Just like the plaintiff in *Advanced Testing*, EchoSpan

---

[3] The counts specific to EchoSpan's conversion and unjust enrichment claims are admittedly not as expansive in referencing conduct independent of improper access to confidential information. But the Complaint nevertheless alleges sufficient facts to plausibly suggest that Medallia was unjustly enriched and converted EchoSpan's property as a result of fraud. Thus, the Complaint provides fair notice to Medallia that these common law claims are based on conduct independent of improper use of EchoSpan's confidential information. These claims should not be dismissed as a

alleges that Medallia's "wrongful conduct is [its] representation[s]." *Advanced Testing*, 2013 WL 12212927, at *1 ("Thus, the Defendants' contention that the Plaintiff's tortious interference claims are superseded by the GTSA is unfounded."). Specifically, EchoSpan alleges that Medallia represented it would use access to EchoSpan's tool "only for the purpose of evaluation of the Hosted Services for purchase" (Ts&Cs, §3.g); that it would not "resell, sublicense . . . or otherwise make Hosted Services available to any third party other than as contemplated by this Agreement (*id.*, §19.b); and Medallia unequivocally agreed it would not "modify, copy or create derivative works based on the Hosted Services" or "reverse engineer the Hosted Services" (*id.*, §19.c). "None of these allegations involve the misappropriation of trade secrets, and therefore, are not preempted by the GTSA." *NCR Corp.*, 2018 WL 11343391, at *12.

Indeed, the single case Medallia cites to support its contention that the GTSA supersedes tortious interference claims actually favors EchoSpan. Motion at 12-13 (citing *Agilysys*, 258 F.Supp. 3d at 1352-53).[4] In *Agilysys*, a case involving a former

---

result. Or, at a minimum, if dismissed, EchoSpan should be given leave to replead them as supported by the fraud claims.

[4] *Agilysys* is the only case Medallia cites in support of its statement that "[t]he GTSA supersedes EchoSpan's common law claims for . . . tortious interference" that Medallia describes as involving claims for tortious interference. *See* Opp. at 12-13. While the court in *Agilysys* ultimately dismissed the tortious interference claims, the

18

employee who allegedly absconded with "templates for proposals used to garner previous customer relationships," among other information (*id.* at 1338), the court refused to dismiss the tortious interference claim as superseded. *Id.* at 1353. The court held that the plaintiff's tortious interference claim was based on wrongdoing in addition to misappropriation of confidential information, namely fraudulent and defamatory statements. *Id.* ("Plaintiff makes the additional allegation that . . . Defendants solicited customers by falsely stating that Agilysys was no longer in the business of selling certain hardware or solutions. Thus, Plaintiff contends that Hall's defamatory statements interfered with Agilysys' business relationships."). Just like Medallia's fraudulent statements in the Ts&Cs, the inaccurate statements in *Agilysys* are "separate from the allegations underlying Plaintiff's claim for misappropriation." *Id.* The GTSA does not supersede those claims. *See Schwieterman*, 2021 WL 3026958, at *9-10 (denying motion to dismiss tortious interference claims).

---

court expressly rejected the defendants' argument that GTSA superseded those claims and dismissed the claim for other reasons. Medallia's sole basis for challenging the tortious interference in this claim is supersession, and thus *Agilysys* does not support the challenge.

       *d)*      *These allegations similarly support EchoSpan's statutory claims.*

Medallia's argument that the GTSA supersedes EchoSpan's claim under the GCSPA also misstates the law. According to Judge Totenberg:

> The Court finds that the Georgia Computer Systems Protection Act is not superseded by the GTSA because it is not merely a conflicting common-law theory of recovery and because it was enacted after the GTSA and expressly provides for a cause of action for misappropriation of intellectual property, including trade secrets, resulting from the improper use of a computer.

*IPC Systems v. Garrigan*, No. 1:11-cv-3910-AT, 2012 WL 12872028, at \*11 (N.D. Ga. May 21, 2012).   Despite *IPC System's* persuasiveness (and its direct contradiction to Medallia's position), Medallia does not cite or acknowledge it.

Medallia has nevertheless located several cases where courts, without discussing *IPC Systems* or attempting to distinguish it, have dismissed GCSPA claims as superseded by the GTSA.  *See* Motion at 14.  It is not clear from those opinions whether the plaintiff even argued that the GCSPA cannot be superseded. In any event, those opinions certainly did not grapple with the points Judge Totenberg found convincing in concluding that the GTSA cannot supersede the later-enacted GCSPA, which expressly provides for an independent cause of action for misappropriation of trade secrets.  *See* O.C.G.A. § 16-9-93(g)(1).  Judicially eliminating this cause of action, by concluding that it is superseded by the GTSA,

20

would conflict with the obvious legislative intent of the Georgia Assembly in expressly providing for this cause of action notwithstanding the supersession provisions of GTSA.

In any event, the GTSA can only supersede claims "that rely on the same allegations as those underlying" a claim for misappropriation of trade secrets.  *See Robbins*, 290 Ga. at 466 (quotations omitted).  The statutory claims that Medallia challenges—both its claim under the GCSPA and its claim under the GUDTPA— are not limited to alleged misappropriation of confidential information.  *See* Compl, ¶¶ 117-118 (regarding EchoSpan's GCSPA claim); ¶¶ 101-104 (regarding EchoSpan's GUDTPA claim).  Like the common law claims, these statutory claims focus on the fraudulent representations Medallia made to access EchoSpan's product, reverse engineer that product, and attempt to compete with EchoSpan as a result of that activity.[5]

Finally, in another one-paragraph throw-away argument, Medallia contends that EchoSpan has not sufficiently pled its claim under the GUDTA.  Medallia claims that "[a]s a matter of law, creating a likelihood of confusion over one's

---

[5] That the supersession argument with respect to these statutes may depend on the particular facts alleged that support these claims again counsels in favor of resolving the supersession issue following development of the factual record. *See*, *supra*, Section II.A.

intention in entering into a contract is not a 'deceptive trade practice' under the GUDTPA" because likelihood of confusion of that sort is, according to Medallia, not one of the enumerated kinds of confusion that the GUDTPA addresses. Motion at 16. Medallia cites no cases in support of this argument (*id.*), and for good reason. The enumerated list of matters identified in the statute is expressly not exhaustive. *See* O.C.G.A. § 10-1-372(a)(11). And the statute has been applied in circumstances like this one. *See e.g.*, *Trotman v. Velociteach Project Mgmt, LLC*, 311 Ga. App. 208, 212-213 (2011) (affirming judgment on GUDTPA claim in case alleging former employee misappropriation of confidential information); *Iler Group, Inc. v. Discrete Wireless, Inc.*, 90 F.Supp. 3d 1329, 1342-43 (N.D. Ga. 2015) (denying motion to dismiss GUDTPA claim in case alleging improper interaction with plaintiff's customers).

The GUDTPA's catch-all provision broadly applies to prohibit with any representation that creates a likelihood of confusion regardless of whether the likelihood of confusion relates to one of the enumerated areas described in the statute. And here, EchoSpan alleges that Medallia's activity has allowed it to develop a competing product that is not truly Medallia's; it is a copy of EchoSpan's product that Medallia was contractually prohibited from creating. This is precisely within the scope of the GUDTPA. *See* O.C.G.A. § 10-1-372.

## III.   CONCLUSION

Medallia's partial motion to dismiss ignores significant swaths of EchoSpan's allegations.   As the Complaint makes clear, this case extends beyond merely an alleged misappropriation of confidential and trade secret information.   The GTSA expressly does not supersede these claims.

Respectfully submitted this 29th day of November, 2021.

/s/ Jonathan R. Chally
Jonathan R. Chally
Georgia Bar No. 141392
Joshua P. Gunnemann
Georgia Bar No. 152250

**COUNCILL, GUNNEMANN & CHALLY LLC**
1201 Peachtree Street NE
Building 400, Suite 100
Atlanta, Georgia  30361
Telephone: 404-407-5250
Facsimile: 404-600-1624
jchally@cgc-law.com
jgunnemann@cgc-law.com                    *Counsel for Plaintiff*

23

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1</u>

Pursuant to Local Rule 7.1(D), the undersigned counsel hereby certifies that

the foregoing has been prepared in accordance with Local Rule 5.1(C) using 14-

point Times New Roman font.

/s/ Jonathan R. Chally
Jonathan R. Chally
Georgia Bar No. 141392

**COUNCILL, GUNNEMANN &
CHALLY LLC**
1201 Peachtree Street NE
Building 400, Suite 100
Atlanta, Georgia  30361
Telephone: 404-407-5250
Facsimile: 404-600-1624
jchally@cgc-law.com

*Counsel for Plaintiff*

24

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.

/s/ Jonathan R. Chally
Jonathan R. Chally
Georgia Bar No. 141392

**COUNCILL, GUNNEMANN &
CHALLY LLC**
1201 Peachtree Street NE
Building 400, Suite 100
Atlanta, Georgia  30361
Telephone: 404-407-5250
Facsimile: 404-600-1624
jchally@cgc-law.com

*Counsel for Plaintiff*

25