UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ECHOSPAN, INC., <br><br> Plaintiff, <br><br> v. <br><br> MEDALLIA, INC., <br><br> Defendant. | CIVIL ACTION NO. <br> 1:21-cv-04318-JPB |

### ORDER

Before the Court is Defendant Medallia, Inc.'s ("Medallia") Motion to Transfer Venue ("Motion"). ECF No. 13. Having reviewed and fully considered the papers filed therewith, the Court finds as follows:

### I.  BACKGROUND

Plaintiff EchoSpan, Inc. ("EchoSpan") filed suit against Medallia alleging that Medallia misappropriated EchoSpan's confidential information relating to its Feedback Tool. The Complaint asserts that Medallia obtained the information during its trial use of the tool (the "Trial Period") and after the parties began acquisition talks under a non-disclosure agreement (the "NDA Period"). EchoSpan contends that Medallia used the confidential information to produce a competing product that it then used to solicit EchoSpan's customers. The Complaint alleges

numerous causes of action, including breach of contract, tortious interference with business relationships, fraud, unfair trade and trade secret misappropriation.

In the instant Motion, Medallia seeks transfer of the case to the Northern District of California (San Jose Division), pursuant to 28 U.S.C. § 1404(a). Medallia's Motion is based on a forum selection clause in the parties' Mutual Non-Disclosure Agreement ("NDA").

The NDA was executed after the Trial Period ended and at the beginning of the NDA Period, and it sets forth terms governing the parties' use of "Confidential Information."  The NDA defines Confidential Information as

> information relating to the Discloser's business, including, without limitation, product designs, product plans, software and technology, financial information, marketing plans, business opportunities, pricing information, discounts, inventions and know how to the extent disclosed to the Recipient hereunder.  Confidential Information also includes the terms and conditions of this Agreement and the existence of the discussions between the parties.

ECF No. 14-2 at 2, ¶ 1.

The NDA also provides that

> [u]nless waived by Medallia in its sole discretion, the jurisdiction and venue for any action arising out of or relating to the subject matter of this Agreement shall be the California state and United States federal courts serving Santa Clara County, California, and both parties hereby submit to the personal jurisdiction of such courts.

*Id.* ¶ 13.

Additionally, the NDA contains a merger clause, which states that the agreement "supersedes all prior discussions and writings and constitutes the entire agreement between the parties with respect to the subject matter hereof." *Id.*

Medallia argues that this case must be transferred because *Atlantic Marine Construction Co., Inc. v. United States District Court* requires the Court to give controlling weight to the California forum selection clause in the NDA. 571 U.S. 49, 63 (2013). Medallia further contends that *Atlantic* requires the Court to disregard any private factor considerations that EchoSpan may raise in opposition to transfer (*e.g.*, convenience) and permits the Court to deny transfer only in exceptional cases involving public policy concerns. Medallia concludes that EchoSpan cannot show any exceptional reason that would defeat the NDA's forum selection clause and the required transfer.

EchoSpan responds that Medallia's Motion should be denied because EchoSpan's Terms and Conditions agreement ("TCA"), which Medallia agreed to before the Trial Period began, designates Georgia as the appropriate forum for this dispute. The TCA provides that "[a]ny dispute in connection with [its terms] . . . shall be submitted to confidential arbitration in Atlanta, Georgia, USA, except that . . . the party seeking relief may seek injunctive or other appropriate relief" in state or federal court in Georgia. ECF No. 10-3 at 1, § 1.

EchoSpan argues that since the TCA's forum selection clause conflicts with the NDA's clause, the Court must look at the specific facts of this case to determine which clause to enforce. In EchoSpan's view, the TCA, which directly establishes the terms of Medallia's access to EchoSpan's confidential information, has the strongest connection to EchoSpan's claims and should take precedence over the NDA, whose subject matter is merely the "possible exploration of an acquisition . . . involving Medallia and EchoSpan." ECF No. 18-1 at 7.

EchoSpan also maintains that the TCA should govern because it was the only agreement in place when Medallia initially gained access to EchoSpan's information during the Trial Period. EchoSpan asserts that because the later executed NDA expressly excludes information in the parties' possession before the NDA went into effect, the information Medallia acquired during the Trial Period is covered only by the TCA, and the TCA provides the exclusive remedy for Medallia's alleged misappropriation of information obtained during that period.

Additionally, EchoSpan contends that the TCA's forum selection clause should apply because "a principal focus" of this case is Medallia's allegedly improper use of EchoSpan's proprietary information obtained during the Trial Period when the TCA was in effect. EchoSpan explains that Medallia obtained the "most critical information" necessary to reverse engineer EchoSpan's Feedback

4

Tool during this time. However, the record does not reflect (and it is likely impossible to know at this early stage of the litigation) the specific insight Medallia obtained during the Trial Period versus during the NDA Period.

Finally, EchoSpan asserts that the forum selection clause in the NDA should not be enforced because the NDA was procured by fraud. EchoSpan believes that Medallia had no intention of entering into a transaction with EchoSpan when it executed the NDA, and it did so only to gain further access to EchoSpan's confidential information. As support for this point, EchoSpan points to a conversation with "a senior Medallia executive," the contents of which Medallia disputes.

## II.　ANALYSIS

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  § 1404(a). As the Supreme Court explained in *Atlantic*, "[i]n the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations." 571 U.S. at 62. The court is required to "weigh the relevant factors and decide whether, on balance, a transfer

would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Id*. at 62-63 (citation omitted).

However, "when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum[,]" it "should be given controlling weight in all but the most exceptional cases." *Id*. "The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id*. at 63. Therefore, the plaintiff's choice of forum is accorded no weight, and the burden is placed on the party opposing the transfer to show that transfer to the bargained-for forum is unwarranted. *Id*.

The court also does not consider any arguments regarding the parties' private interests because by agreeing to a forum-selection clause, the parties are deemed to have waived the right to argue that such forum is inconvenient or less convenient. *Id*. at 64. In other words, the district court may consider only arguments relating to the public interest factors. Those factors include "'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id*. at 63 n.6 (citation omitted).

6

Even then, "those factors will rarely defeat a transfer motion" where the underlying agreement identifies the transferee forum as the proper place for the action. *Id*. at 64. In sum, a district court may refuse to transfer a case notwithstanding the counterweight of a forum-selection clause only in "unusual" or "exceptional" cases. *Id*. at 64.

The Court first addresses the question of which of the two competing forum selection clauses should be enforced.

The NDA, which Medallia argues is the relevant agreement, contains a merger clause that explicitly "supersedes all prior discussions and writings" regarding "the subject matter" of the NDA. ECF No. 14-2, ¶ 13. The Court interprets this clause as a clear indication that the parties intended the later-executed NDA to replace any prior agreements and govern the parties' relationship as it relates to the exchange of confidential information and the selection of a forum to resolve disputes. *See Drax Biomass, Inc. v. Lamb*, No. 1:20-CV-04727-SDG, 2021 WL 1439932, at *5 (N.D. Ga. Apr. 16, 2021) (stating that when faced with differing forum selection clauses in competing agreements, courts focus on whether "the later agreement contains a merger clause that designates it as the document that fully embodies the parties' rights and obligations"). Therefore, the forum selection clause in the NDA identifying California as the proper forum for

this dispute governs.  *See id*. (enforcing the forum selection clause in the later agreement because that agreement contained an "explicit merger clause," which provided that the agreement "'supersede[d] any prior agreements or understandings made by the parties'").

The Court is not persuaded by EchoSpan's arguments for disregarding the forum selection clause in the NDA in favor of the earlier-executed TCA.  First, EchoSpan's position that the NDA does not apply because its "subject matter" is a potential merger transaction, not the parties' confidential information, is contrary to the plain terms of the NDA.  The majority of the paragraphs in the NDA pertains to the parties' confidential information, including a definition of Confidential Information, terms of its disclosure, the length of the confidentiality period, return or destruction of confidential information, the nature of proprietary rights, etc. ECF No. 14-2, ¶¶ 1-7.  Indeed, the NDA contains only two brief references to a potential transaction.

Second, EchoSpan's argument that the NDA does not cover information EchoSpan provided during the Trial Period and therefore would not provide a remedy for Medallia's alleged misappropriation of such information is without merit.  The NDA's exclusion language pertains to information in Medallia's possession that it acquired "***before receipt***" of EchoSpan's confidential

information. *Id.* ¶ 5 (emphasis added).  In other words, the NDA excludes only information Medallia already had in its possession before EchoSpan shared its confidential information.  As Medallia points out, this is a common provision in non-disclosure agreements, and it makes sense that no liability would attach for use of information that was already in a party's possession.

Since the information EchoSpan shared during the Trial Period was allegedly new to Medallia and not previously in its possession, such information is not excluded from the NDA's reach.  In sum, the merger clause brings into the NDA's ambit new information EchoSpan provided to Medallia during the Trial and NDA Periods, notwithstanding that the NDA was executed after the Trial Period ended.  Therefore, enforcing the NDA would not deprive EchoSpan of a remedy.

But even if the Court were to find that the NDA covered only the information provided during the NDA period, and the TCA covered the information provided during the Trial Period, EchoSpan has not provided facts that would allow the Court to identify the specific information protected by the TCA versus the information protected by the NDA.  EchoSpan's bare allegation that Medallia had acquired "critical information" by the end of the Trial Period does not provide a basis upon which to make this determination.

To the extent such determination were possible, EchoSpan, itself, recognizes and wishes to avoid the waste of resources, among other disadvantages, that would result in litigating part of its claims under the TCA in Georgia and the remaining claims under the NDA in California. Thus, the Court sees no reason to apply an artificial distinction to the claims based on the period during which the information was acquired.

Third, EchoSpan's contention that the Court should enforce the TCA because it governs the Trial Period, which has a stronger connection to the dispute, is at odds with the allegations in the Complaint. The Complaint asserts that EchoSpan also provided detailed confidential information to Medallia during the NDA period that Medallia improperly used to compete with EchoSpan. Those allegations undercut EchoSpan's framing of its claims as largely relating to information obtained during the Trial Period. Given that allegations relating to the NDA Period are incorporated into all counts of the Complaint, they would appear to be at least as important as the allegations relating to the Trial Period.

Importantly, the Complaint's careful avoidance of reference to the NDA does not diminish the NDA's importance. The Court's focus is on the substance of the claims, not the form. *See Infectious Disease Sols., PC v. Synamed*, No. 1:07-cv-0211, 2007 WL 2454093, at *2 n.2 (N.D. Ga. Aug. 23, 2007) (stating that "'[i]f

forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading of claims'"); *Oribe Hair Care, LLC v. Canales*, No. 17-CV-20148, 2017 WL 2059582, at *4 (S.D. Fla. May 15, 2017) (declining to "accept the invitation to reward attempts to evade enforcement of forum selection agreements through artful pleading") (internal punctuation omitted). As such, there is no basis upon which to conclude that the TCA has a stronger connection to EchoSpan's claims than the NDA.

Finally, EchoSpan has not provided significant evidence to support its claim that the NDA was procured by fraud. EchoSpan points to a conversation with "a senior Medallia executive" as proof of its allegations, but Medallia disputes EchoSpan's description of the events. Therefore, the Court is left with competing narratives regarding what occurred. That is simply not enough to invalidate the NDA or its forum selection clause. *See Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1297 (11th Cir. 2021) (stating that "[u]nder federal law, forum selection clauses 'are presumptively valid and enforceable unless the plaintiff makes a strong showing that enforcement would be unfair or unreasonable under the circumstances'") (quoting *Rucker v. Oasis Legal Fin., L.L.C.*, 632 F.3d 1231, 1235 (11th Cir. 2011)).

Further, as the Eleventh Circuit Court of Appeals explained in *Don't Look*, the fraud exception applies when the ***inclusion*** of the forum selection clause in the contract "was the product of fraud or coercion." *Id*. at 1298.  Since EchoSpan's argument is rather that the NDA, itself, was procured by fraud, the fraud exception does not apply.

For all these reasons, the Court finds that the forum selection clause of the NDA governs this dispute.

The Court next determines whether there is any reason to disregard the NDA's forum selection clause.  As set forth above, the Court may consider only arguments relating to the public interest factors.

While EchoSpan points to evidence that the Northern District of California has a heavy case load, those facts do not demonstrate a "'***strong*** showing that enforcement would be unfair or unreasonable under the circumstances.'" *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (emphasis added) (citation omitted).  This is necessary to overcome the well-settled policy that "forum-selection clauses are 'presumptively valid and enforceable.'" *Id*.

The Court also notes that district courts are eminently capable of applying the law of states other than the one in which they sit, so the state law applicable to

this case—whether Georgia or California—is not a reason to deny or grant transfer here.

This case is also not the type of localized controversy that is better addressed in Georgia versus in California. It involves two sophisticated companies located in Georgia and California that engaged in an arms-length transaction.

In sum, EchoSpan has not carried its burden to show that the public interest factors overcome the presumption that the California forum selection clause is enforceable.

Based on the foregoing analysis, the Court finds that transfer of this case to the Northern District of California, San Jose Division is appropriate. Accordingly, Medallia's Motion to Transfer (ECF No. 13) is **GRANTED**.

The Clerk is **DIRECTED** to transfer the case to the Northern District of California, San Jose Division.

**SO ORDERED** this 7th day of February, 2022.

J. P. BOULEE
United States District Judge